# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re | Case No. 03-00817<br>Chapter 11 |
| HAWAIIAN AIRLINES, INC., | |
|     Debtor. | |
| ──────────────────── | Adv. Pro. No. 06-90026 |
| HAWAIIAN AIRLINES, INC., | |
|     Plaintiff, | |
|     vs. | |
| MESA AIR GROUP, INC., | |
|     Defendant. | Re: Docket No. 373 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
## ON MOTION FOR SANCTIONS

On September 7, 2007, plaintiff Hawaiian Airlines, Inc. ("HA"), filed Plaintiff's Motion for Sanctions Against Defendant Mesa Air Group, Inc. ("Mesa") (docket no. 373). The court held an evidentiary hearing on the motion on September 25-27, 2007.

In summary, one of Mesa's top officers deliberately destroyed electronic evidence that Mesa had a duty to preserve. This misconduct is unfair to HA because it will make it more difficult for HA to prove portions of its case. Further,

it makes common sense to assume that the destroyed evidence was unfavorable to Mesa. Therefore, I will make findings of fact in favor of HA on some (but not all) of the major issues in this case.

Based on the evidence, the court makes the following FINDINGS OF FACT:

1. HA commenced a chapter 11 reorganization case in this court in 2003. During the case, HA conducted a "sale process" to solicit an investment that would fund a plan of reorganization. HA began by sending a short memorandum, called the "teaser," to about fifty parties that HA and its consultants thought might be interested in the investment opportunity. HA made additional information available to parties that expressed interest in pursuing the investment. HA furnished information to prospects partly by sending them paper documents, but mostly by giving them passwords that allowed the prospects to gain access to a secure website (the "data vault") containing electronic documents that the prospects could view or download.

2. HA believed that much of the information was confidential and competitively sensitive. Therefore, HA insisted that prospective investors enter into a confidentiality agreement that required them to maintain the confidentiality of certain information (the "Evaluation Material"), to return or destroy the

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 451   Filed  10/30/07   Page 2 of 22

Evaluation Material at an agreed upon time, and to refrain from using the Evaluation Material for any purpose other than evaluating the potential transaction.

3.      Mesa is one of the prospective investors that participated in the sale process, signed a confidentiality agreement, and obtained information from HA. HA alleges that at least some of the information it gave to Mesa was Evaluation Material. HA claims that Mesa breached the confidentiality agreement by failing to return or destroy the Evaluation Material and instead misusing it when Mesa started providing air transportation service among the Hawaiian islands in direct competition with HA.

4.      George Peter Murnane III is Mesa's executive vice president and chief financial officer and was at all relevant times one of the top two or three officers of Mesa. Mr. Murnane signed the confidentiality agreement on behalf of Mesa. He accessed the data vault and downloaded numerous documents found there.

5.      Mr. Murnane had a home computer that belonged to him and two laptop computers, called Laptop 1 and Laptop 2, that belonged to Mesa. Laptop 1 was Mr. Murnane's primary work computer until Mesa issued Laptop 2 to him. Mr. Murnane then used Laptop 2 as his primary work computer and kept Laptop 1 as a spare. Mr. Murnane is an experienced and knowledgeable computer user.

6.      Mr. Murnane installed a program on both Laptop 1 and Laptop 2

-3-

called System Mechanic Professional 6. System Mechanic has a subprogram called DriveScrubber2 that permanently deletes files from a computer.

7. When an active file (a file that a user can view) is deleted on a computer using the Windows operating system, the data comprising the file is not erased; instead, the file is removed from the "index" of all active files on the disk, and the disk space that contains the deleted file is gradually written over as new files are written to the disk. A person with the appropriate skill and software can analyze the bits of data left on the "unallocated space" of the drive (the portions of the disk that, according to the "index," do not contain active files) and reassemble some or all of the deleted files. "Disk wiping" programs like DriveScrubber2 render deleted files unrecoverable by writing meaningless data (usually repeated strings of hexadecimal characters) to the unallocated space of the disk, permanently eliminating the residue of previously deleted files.

8. While this litigation was pending, Mr. Murnane used DiskScrubber2 (or a similar program) to render unrecoverable any deleted files on Laptop 1 and Laptop 2. He also changed the system clock of Laptop 1 and Laptop 2 in an attempt to make it appear that he had destroyed the deleted files before HA filed its complaint. By doing this, Mr. Murnane successfully destroyed any relevant evidence that might have been in the unallocated space of the hard drives on

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 451   Filed  10/30/07   Page 4 of 22

Laptop 1 or Laptop 2 and unsuccessfully attempted to conceal the fact that he had done so.

9.     Mr. Murnane's destruction of evidence was intentional, deliberate, willful, and in bad faith.

a.     Programs like DiskScrubber2 do not run themselves.  The computer user must start the program and issue the appropriate commands.  Mr. Murnane was logged on to Laptop 1 and Laptop 2 when DiskScrubber2 was run.  Mr. Murnane must have deliberately initiated DiskScrubber2.

b.     Mr. Murnane's data wiping activities occurred in close proximity to important events in this case.

i.     The day after HA filed its complaint against Mesa, an attorney employed by Mesa sent an email to Mesa's three top officers instructing them to "preserve any and all documents that may be related to the matters set forth in the Complaint including emails, electronic documents, notes, models etc."  The recipients of the email were Jonathan Ornstein, Mesa's chairman and chief executive officer, Mr. Murnane, and Michael Lotz, who was then Mesa's president and chief operating officer.

ii.     Mr. Murnane began to search for a data wiping program a week after he received this email.  On February 21, 2006, Mr. Murnane sent an

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 451   Filed  10/30/07   Page 5 of 22

email to a person not employed by Mesa asking if his correspondent knew "of any good programs to (a) identify deleted files on a hard drive (such as old Quicken files) and (b) delete such files so it appears they were never on the hard drive?" Mr. Murnane's correspondent provided some suggestions and, on February 24, 2006, Mr. Murnane asked him a further question about how to "permanently delete" files.

       iii.    On March 3, 2006, about a week after Mr. Murnane investigated disk wiping programs, Mr. Murnane signed a declaration that was later attached to Mesa's answer to the complaint. Mr. Murnane's detailed account was intended to establish that Mesa had handled the Evaluation Material with great care and had never misused any of it. Among other things, Mr. Murnane swore that he had copied some of HA's electronic documents to a CD but "did not copy the information on the CD to the hard drive of any computer, including specifically my office computer." (When he later wiped the hard drives of Laptop 1 and Laptop 2, Mr. Murnane made it impossible for HA to test this assertion fully.) Mr. Murnane also swore that he did not give anyone else access to the CD, and did not use any of the Evaluation Material for any prohibited purpose.

       iv.    On June 28, 2006, HA filed a motion for preliminary injunction, in which HA offered evidence that Mr. Murnane's declaration was false

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 451   Filed  10/30/07   Page 6 of 22

in important respects. Among other things, HA demonstrated that Mr. Murnane had taken an information memorandum prepared by HA and copied portions of it, verbatim, into a draft offering memorandum that Mesa prepared (but ultimately did not use) to seek investors in Mesa's new Hawaii venture. HA also proved that Mr. Murnane had sent a copy of portions of HA's information memorandum to colleagues at Mesa with instructions that Mesa's own offering memorandum "needs to be more like the attached." This was directly contrary to Mr. Murnane's sworn statement that "[a]t no time was the information I obtained [from HA] used in any fashion whatsoever in evaluating or considering whether Mesa would enter the Hawaiian inter-island air service market or in formulating its plan to do so."

v. On or about July 16, 2006, in the face of HA's motion for preliminary injunction, Mr. Murnane wiped the hard drive of Laptop 2 and changed the computer's clock in an attempt to conceal what he had done.

vi. On August 7, 2006, Mr. Murnane filed a second declaration in which he admitted that some of his prior testimony was wrong but maintained that Mesa had not violated the confidentiality agreement.

vii. At a hearing on August 8, 2006, I made pointed comments about Mr. Murnane's credibility. Beginning that day, and continuing until September 16, 2006 (the day after the hearing on HA's motion for a

-7-

preliminary injunction), Mr. Murnane wiped the hard drive of Laptop 1 and changed that computer's clock in an attempt to conceal what he had done.

        viii.    Although Mr. Murnane made it impossible to determine what files he deleted from Laptop 1 and Laptop 2, other evidence establishes that, around the time that HA filed its complaint, Mr. Murnane deleted numerous files related to HA from other computers. Mr. Murnane had access to storage space, called the "H drive," on Mesa's network servers. At some point between January 2 and April 6, 2006, Mr. Murnane deleted from his H drive numerous files which (based on the file and folder names) related to HA. Because Mesa made intermittent backups of the H drive, Mesa was able to recover and produce many, if not all, of these files. Nevertheless, the fact that Mr. Murnane deleted these files around the time of the commencement of this case, and long after Mesa was obligated to return all Evaluation Material to HA, is evidence of his intention to destroy relevant evidence.

    10.    Mesa has offered no credible innocent explanation for Mr. Murnane's activities (in other words, Mesa has failed to offer a persuasive reason why Mr. Murnane wiped his hard drives other than to destroy relevant evidence).

        a.    Mesa argued that Mr. Murnane wiped the hard drives to conceal evidence that he had viewed "adult content" on them.

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 451   Filed  10/30/07   Page 8 of 22

i.      There is no direct evidence to support this argument.  Mr. Murnane did not testify at the hearing or provide a declaration.

ii.      There is no evidence that either Laptop 1 or Laptop 2 had any traces of adult content.  The only evidence that Mr. Murnane had adult content on his computer was testimony about two isolated incidents that occurred in 2003 or early 2004.  The Mesa information technology specialist who regularly worked on Mr. Murnane's laptops since mid-2004 testified that he never saw any adult content on Mr. Murnane's computers.

iii.      Jonathan Ornstein, Mesa's chairman and chief executive officer, has been a close friend of Mr. Murnane for over thirty years.  Mr. Ornstein testified that Mr. Murnane told him that he wiped the hard drives in order to conceal adult content on the computers.  Based on his relationship with Mr. Murnane, Mr. Ornstein is in a good position to tell whether Mr. Murnane was truthful.  It was absolutely clear from Mr. Ornstein's words and demeanor on the witness stand that he did not believe Mr. Murnane's "adult content" explanation.

iv.      The "adult content" argument does not explain why Mr. Murnane deleted files relating to HA from the H drive.  There is no evidence that Mr. Murnane ever had any adult content on the H drive, let alone that any of the files he deleted from the H drive actually contained adult content even though the

-9-

file and folder names showed that they related to HA.

        b.     Mesa argued that Mr. Murnane wiped the hard drive of Laptop 2 in order to avoid inadvertent disclosure of confidential Mesa information. Mr. Murnane reportedly experienced trouble with Laptop 2 beginning on July 5, 2006. Mesa's information technology department had it repaired but decided to issue a new laptop to Mr. Murnane. In accordance with Mesa's usual procedures, Laptop 2 would have been kept in storage or issued to another Mesa employee. Mesa argues that Mr. Murnane wiped the hard disk to keep others from viewing confidential data on that disk.

        i.     Because Mr. Murnane did not testify or provide a declaration at the hearing, there is no direct evidence to support this argument.

        ii.     It is not credible to suggest that a high-level officer and busy person such as Mr. Murnane would have done a mundane task like this himself rather than leaving it to Mesa's IT department.

        iii.     It is not credible to suggest that Mr. Murnane would have gone to such lengths to keep Mesa's confidential data away from <u>other Mesa employees</u>.

    11.    Mr. Murnane's intentional conduct permanently destroyed potentially relevant evidence.

-10-

a.    Because Mr. Murnane wiped the hard disks of Laptop 1 and Laptop 2, it is impossible to determine whether Mr. Murnane deleted files related to HA from those drives (just as he did on his H drive).  Such files could well have helped HA challenge the testimony of Mr. Murnane and other witnesses and establish that Mesa retained and misused the Evaluation Material in breach of the confidentiality agreement.

b.    Mr. Murnane's deletion of files from the H drive may have deprived HA of relevant evidence.  Using backup tapes, Mesa was able to recover and produce many of the deleted documents.  But Mesa's backup system did not reliably backup the H drive on a daily basis.  The only useable backups during the relevant period were taken on January 2 and April 6, 2006.  If Mr. Murnane created a file on the H drive after January 2 (or transferred a file from another computer, such as Laptop 1 or Laptop 2, to the H drive after January 2), and deleted it before April 6, that file could not be identified or recovered.

12.    There is no evidence that any Mesa officer or employee other than Mr. Murnane, or any of Mesa's counsel, knew of or condoned Mr. Murnane's destruction of evidence when it occurred.

13.    Mesa could have taken reasonable steps that would have prevented, or mitigated the consequences of, Mr. Murnane's destruction of evidence.  For

-11-

example, Mesa could have made a backup of Mr. Murnane's H drive and the hard drives of Laptop 1 and Laptop 2 promptly after HA filed suit. Doing so would not have been costly, burdensome, or unduly disruptive of Mesa's business. Instead, Mesa simply told Mr. Murnane to preserve all evidence and trusted him to comply. Even though Mr. Murnane was a valued, trusted, high level employee of the company, Mesa could and should have taken reasonable steps to prevent all of its employees from doing wrongful and foolish things, like destroying evidence, under the pressure of litigation. Because Mesa failed to take such steps, Mesa facilitated Mr. Murnane's misconduct.

Based upon these factual findings, I draw the following CONCLUSIONS OF LAW:

1.      The court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (O), and 28 U.S.C. § 1334(b). This is a core proceeding.

2.      The court has inherent power to impose sanctions for misconduct by or on behalf of a party in a case before it. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).

3.      The court's inherent authority to sanction misconduct includes the power to impose sanctions for spoliation of evidence. Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 368 (9th Cir. 1992); Baliotis v.

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 451   Filed 10/30/07   Page 12 of 22

McNeil, 870 F.Supp. 1285, 1289 (M.D. Pa. 1994).

4.     Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).

5.     Deleting files and then "wiping" a hard disk can constitute spoliation of evidence. Leon v. IDX Sys. Corp., 464 F.3d 951, 959 (9th Cir. 2006).

6.     "It is a well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." Kronisch v. U.S., 150 F.3d 112, 126 (2d Cir. 1998); accord, Ritchie v. U.S., 451 F.3d 1019, 1024 (9th Cir. 2006). An adverse inference can be drawn if (1) the party had a duty to preserve the evidence when it was destroyed, (2) the destruction was intentional, and (3) the destroyed evidence would have been relevant to the contested issue. Kronisch, 150 F.3d at 126-27; Ritchie, 451 F.3d at 1024-25.

7.     Mesa had a duty to preserve all relevant evidence as soon as HA sued Mesa. Mr. Murnane had a duty to preserve all relevant evidence as soon as Mesa's counsel told Mr. Murnane to do so. Kronisch, 150 F.3d at 126. Mr. Murnane

-13-

breached that duty by wiping the hard drives of Laptop 1 and Laptop 2, rendering unrecoverable any deleted files. He may also have breached that duty by deleting files from the H drive that could not later be identified or recovered.

8. Mr. Murnane's spoliation is attributable to Mesa, and Mesa must be held accountable for that misconduct.

a. Mr. Murnane is Mesa's executive vice president and chief financial officer. He acted in the course and scope of his employment, in an attempt to further Mesa's interests, using Mesa's computer equipment. Initially, Mesa offered Mr. Murnane as its primary witness.

b. The confidentiality agreement provides that "Mesa shall be responsible for any breach of this agreement by Mesa's employees, officers and Representatives . . . ." Mesa should also be responsible for the intentional destruction by one of its highest ranking officers of evidence that could have shown whether Mesa complied with that agreement.

c. Mesa could have prevented Mr. Murnane from destroying evidence, or at least limited his ability to destroy evidence, by taking reasonable, inexpensive, and non-burdensome steps. Mesa failed to do so and is responsible for the consequences of that failure.

9. As set forth in the findings of fact, Mr. Murnane's destruction of

-14-

evidence was intentional.

10.     It is likely that the evidence which Mr. Murnane destroyed would have been relevant to the contested issues of whether Mesa retained and misused any Evaluation Material it received in violation of the confidentiality agreement and whether Mesa's misuse of Evaluation Material was a substantial factor in its decision to enter the interisland air transportation market.

a.     Establishing the relevance of destroyed evidence can be difficult, particularly where the destruction has been so complete that it is impossible to determine what exactly was destroyed.  Kronisch, 150 F.3d at 128; Ritchie, 451 F.3d 1019.  If the "document destruction has made it more difficult for a party to prove that the documents destroyed were relevant . . ., the burden on the party seeking the adverse inference is lower; the trier of fact may draw such an inference based even on a very slight showing that the documents are relevant." Ritchie, 451 F.3d at 1025.

b.     By wiping the hard disks of Laptop 1 and Laptop 2, Mr. Murnane made it impossible for anyone to discover whether he deleted Evaluation Material from those hard disks.

c.     HA has made a substantial showing that the evidence which Mr. Murnane destroyed would have been relevant to HA's claims that Mesa retained and misused HA's confidential information and that Mesa's misuse was a

-15-

substantial factor in its decision to enter the interisland market.  HA established that:

>i.    Around the time that HA sued Mesa, and at about the same time that Mr. Murnane investigated disk wiping programs, Mr. Murnane deleted clearly relevant documents from his H drive.  It is reasonable to infer that the documents Mr. Murnane destroyed on Laptop 1 and Laptop 2 were also relevant.

>ii.    Mr. Murnane testified in a declaration about his retention and use of HA's information was false.  Mr. Murnane had a motive to conceal documents that could have proven the falsity of his own testimony.

>iii.    Mr. Murnane's disk wiping activities coincided with major developments in the litigation, including developments that raised serious questions about the Mr. Murnane's own truthfulness.   It is unlikely that the timing was coincidental.

11.    It is appropriate to draw an adverse inference against Mesa, due to spoliation of evidence, on these issues.

12.    HA argues that an adverse inference sanction is insufficient, and that the court should impose a default judgment against Mesa.  The court has inherent power, in an appropriate case of spoliation, to impose terminating sanctions (a default judgment against a defendant or a dismissal against a plaintiff).  Leon, 464

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 451   Filed 10/30/07   Page 16 of 22

F.3d at 958.

13.    A default or dismissal sanction can be imposed only based upon a finding of willfulness, fault, or bad faith.  In addition, the court should consider: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.  Leon, 464 F.3d at 958.

14.    A list of factors like this one "amounts to a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything, and not a script for making what the district judge does appeal-proof." Valley Eng'rs Inc. v. Elec. Eng'g Co., 158 F.3d 1051, 1057 (9th Cir. 1998).

a.    *Willfulness, Fault, or Bad Faith*.  Mr. Murnane's conduct, which is attributable to Mesa as explained above, was willful, culpable, and in bad faith.   Mr. Murnane knowingly and deliberately destroyed potentially relevant information.  Leon, 464 F.3d at 959.

b.    *Public Interest in Expeditious Litigation*.  If Mr. Murnane had not destroyed evidence (or if Mesa had prevented him from doing so), the cost and burden of discovery in this case would have been reduced and there is at least a possibility that the case could have been resolved in whole or in part without a trial.

-17-

c.      _Court's Need to Manage Its Docket_.  Although this factor is not a major factor in this case, this case would have been somewhat less burdensome on the court if Mr. Murnane and Mesa had preserved all relevant evidence.

d.      _Risk of Prejudice to HA_.

i.      A party is prejudiced if the spoliation impaired that party's ability to try the case or threatened to interfere with the rightful decision of the case.  Leon, 464 F.3d at 959.  Spoliation can result in prejudice if the victim is forced to rely on "incomplete and spotty evidence." Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 353 (9th Cir. 1995).

ii.      Mr. Murnane's spoliation prejudiced HA.  HA was forced to rely on "incomplete and spotty" evidence in proving that Mesa retained and misused HA's confidential information and that such use was a substantial factor in Mesa's decision to enter the interisland market.

iii.      The prejudice did not affect every element of HA's case, however.  Mr. Murnane's spoliation did not interfere with HA's ability to prove that the information it gave Mesa was in fact confidential.  Also, the spoliation permits no logical inference that HA is entitled to any specific amount of damages or a particular form of injunctive relief.

iv.      Accordingly, the prejudice factors weighs strongly in favor of an adverse inference sanction, but not a default judgment sanction.

-18-

e. _Public Policy Favoring Decisions on Merits_.  This factor usually weighs against a default judgment sanction.  Where one party has destroyed potentially relevant evidence such that the truth may never come out, however, it may become impossible to render a decision "on the merits."  In such a case, this policy consideration may actually weigh in favor of a default judgment.  In this case, because the destroyed evidence was potentially relevant to some issues but not to other issues, this public policy supports an adverse inference sanction, but not a default judgment sanction.

15.  _Availability of Less Drastic Sanctions_.  The availability of less drastic sanctions is a decisive factor against a default sanction.

a.  "[C]ourts should choose 'the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim.'"  In re Napster, Inc. Copyright Litigation, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006)(quoting Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994)).  "If such sanctions [as an adverse inference sanction] would be effective, a default sanction is inappropriate."  Id. at 1074.

b.  An adverse inference instruction would be more consistent with the willfulness of the conduct and the prejudice to HA.  By deleting files and wiping hard drives, Mr. Murnane made it significantly more difficult for HA to prove that Mesa retained and misused HA's secrets when Mesa decided to compete

-19-

with HA. The spoliation did not, however, create an equally significant hurdle in HA's attempt to prove that the information it gave to Mesa was in fact secret, and did not affect at all HA's ability to prove that it had suffered a specific amount of damages or that a particular injunction is warranted.

16. _Conclusion – Adverse Inference v. Default Judgment_.

a. The spoliation doctrine serves various purposes. One set of purposes is evidentiary and remedial: as a matter of common sense, it is reasonable to assume that, when a person destroys evidence, the evidence was unfavorable to that person; and when evidence is destroyed that might have benefitted one party, it is appropriate to impose a sanction that restores the evidentiary status quo. The second category is prophylactic and punitive: spoliation sanctions deter others who might be tempted to destroy evidence and uphold the integrity of the judicial process. Kronisch, 150 F.3d at 126.

b. In this case, an adverse inference sanction serves the remedial and evidentiary purposes of the spoliation doctrine. A default judgment sanction would serve prophylactic and punitive purposes. I am unwilling to impose a prophylactic and punitive sanction in this case for the following reasons (in addition to those stated above).

i. Although Mesa is culpable and must be held accountable for the misconduct of its executive vice president, chief financial officer, and one-

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 451   Filed 10/30/07   Page 20 of 22

time primary witness, it remains true that Mr. Murnane acted alone. A remedial sanction is entirely appropriate, but a punitive sanction seems excessive.

ii.     There are limitations on the power of the bankruptcy court to impose punitive sanctions. See, e.g., In re Dyer, 322 F.3d 1178, 1197 (9th Cir. 2003)("Just as we have never authorized a punitive damage award under the bankruptcy court's civil contempt authority, so too have we refrained from authorizing a punitive damage award under the bankruptcy court's inherent sanction authority.").

17.     Therefore, in order to remedy the prejudice to HA caused by the destruction of potentially relevant evidence, and based on a reasonable inference from that conduct, I will make the following findings of fact, which shall be binding and conclusive for all purposes in this case:

a.     Mesa retained any Evaluation Material it received from HA and did not return or destroy it as the confidentiality agreement required.

b.     Mesa misused any Evaluation Material it received from HA when Mesa decided to enter the market for Hawaii inter-island air transportation services.

c.     The misuse of any such Evaluation Material was a substantial factor in Mesa's decision to enter the market.

18.     HA may also be entitled to costs and reasonable attorneys' fees as a

further sanction.  I will reserve this determination until after trial.

19.     The following major issues remain for trial:

a.      All issues concerning defendant Garfinkle & Wang, LLC, dba GCW Consulting.[1]

b.      Whether and to what extent the information which Mesa received from HA was Evaluation Material.  Mr. Murnane's intentional destruction of evidence suggests that he believed or feared that the evidence was Evaluation Material (if it was not, he arguably would not have gone to the trouble of destroying it), but this inference is not sufficiently strong to justify a conclusive finding on this issue.  I will, however, consider Mr. Murnane's conduct as a piece of evidence tending to show that Mesa was in possession of Evaluation Material.

c.      What damages or injunctive relief should be granted.

*/s/ Robert J. Faris*
**United States Bankruptcy Judge**
Dated: **10/30/2007**

---

[1]In the meantime, HA settled with GCW, and all of HA's claims against GCW have been dismissed with prejudice.

-22-