UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>HAWAIIAN AIRLINES, INC.,<br><br>    Debtor.<br>_____<br><br>HAWAIIAN AIRLINES, INC.,<br><br>    Plaintiff,<br><br> vs.<br><br>MESA AIR GROUP, INC.,<br><br>    Defendant. | Case No. 03-00817<br>Chapter 11<br><br><br><br>Adv. Pro. No. 06-90026<br><br><br><br><br><br><br><br>Re: Docket No. 1 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The trial of this adversary proceeding was held on September 28 through October 4, 2007.

Based on the evidence, the court makes the following FINDINGS OF FACT:

1.    Hawaiian Airlines, Inc. ("HA"), provides air transportation services among the Hawaiian islands and between Hawaii and points outside the state.

2.    HA commenced a chapter 11 reorganization case in this court in 2003. During the case, HA conducted a "sale process" that was meant to solicit an

investment that would fund a plan of reorganization. HA began by sending a short memorandum, called the "teaser," to about fifty parties that HA and its consultants thought might be interested in the investment opportunity. HA made additional information available to parties that expressed interest in pursuing the investment. HA furnished information to prospects partly by sending them paper documents, but mostly by giving them passwords that allowed the prospects to gain access to a secure website (the "data vault") which contained electronic documents that the prospects could view or download.

3. HA believed that much of the information was confidential and competitively sensitive. Therefore, HA required prospective investors to enter into a confidentiality agreement before HA sent them any documents (other than the teaser) or gave them passwords for the data vault.

4. Mesa Air Group, Inc. ("Mesa"), is one of the prospective investors that participated in the sale process, signed a confidentiality agreement, and obtained information from HA.

5. The confidentiality agreement between Mesa and HA contains the following relevant provisions:

> In connection with Mesa's consideration of a possible transaction ("Transaction") involving Hawaiian Airlines, Inc. ("Hawaiian" or the "Company"), Mesa has requested certain confidential and other information concerning the Company.

-2-

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 452   Filed 10/30/07   Page 2 of 14

As a condition to Mesa being furnished with such information, including any Confidential Information Memorandum or similar document, Mesa agrees to treat any information concerning the Company, which is furnished to you by or on behalf of the Company, whether furnished before or after the date of this letter, together with any and all analyses, compilations, studies or other documents prepared by you or any of Mesa's directors, officers, employees, agents, advisors, attorneys, accountants, consultants or representatives (collectively, "Representatives") which contain or otherwise reflect such information (hereinafter collectively referred to as the "Evaluation Material"), in accordance with the provisions of this agreement.

The term "Evaluation Material" includes all information provided to Mesa by the Company and its Representatives before or after the signing of this agreement, whether oral or written and whether in physical or electronic form. It does not include information which . . . was or becomes generally available to the public other than as a result of a disclosure by Mesa or Mesa's Representatives . . . .

Mesa hereby agrees that the Evaluation Material will be used solely for the purpose of evaluating the Transaction between the Company and Mesa. Without limiting the foregoing, Mesa specifically agrees that the Evaluation Material shall not be used to obtain any competitive advantage at any time in the event a Transaction with the Company is not consummated. In addition, such information will be kept confidential by Mesa . . . . In any event, Mesa shall be responsible for any breach of this agreement by Mesa's employees, officers and Representatives, and Mesa agrees, at Mesa's sole expense, to take all reasonably necessary measures to prevent Mesa and Mesa's employees, officers and Representatives from prohibited or unauthorized disclosure or use of the Evaluation Material.

* * *

It is understood and agreed that money damages would not be a sufficient remedy for any breach of this agreement, and that the Company shall be entitled to specific performance and injunctive or

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 452   Filed 10/30/07   Page 3 of 14

other equitable relief as a remedy for any such breach. Such remedy shall not be deemed to be the exclusive remedy for breach of this agreement, but shall be in addition to all other remedies available at law or equity to the Company.

\* \* \*

All Evaluation Material disclosed by the Company shall be and shall remain the property of the Company. Within five days after being so requested by the Company . . . , Mesa will return or destroy all Evaluation Material furnished to Mesa by or on behalf of the Company, including all memoranda, notes, excerpts and other writings or recordings whatsoever prepared by Mesa or Mesa's Representatives based upon, containing or otherwise reflecting any Evaluation Material. . . . . If either party to this agreement decides not to pursue a Transaction, they will promptly notify the other party of that decision. Upon such notice, all of the Evaluation Material, including that portion of the Evaluation Material that consist of analyses, compilation, forecasts, studies, or other documents prepared by Mesa or Mesa's Representatives, will be returned to the appropriate party or destroyed immediately.

\* \* \*

Mesa's obligations under this agreement shall remain in effect for a period of two years from the date of disclosure with respect to any Evaluation Material, unless and until this agreement is terminated by [HA] or is superseded by another written agreement between Mesa and [HA] that concerns Mesa's use of the Evaluation Material.

6.     HA alleges that at least some of the information it gave to Mesa was Evaluation Material. HA claims that Mesa breached the confidentiality agreement by failing to return or destroy the Evaluation Material and instead misusing it when Mesa started providing air transportation service among the Hawaiian islands in

-4-

direct competition with HA.

7. Mesa acknowledges that HA gave Mesa substantial quantities of information about HA in physical and electronic form. Mesa argues, however, that all of that information "was or [became] generally available to the public" and therefore that none of that information was Evaluation Material.

8. Significant amounts of information about HA are generally available to the public. HA's parent company is a publicly traded company which must file reports with the U.S. Securities and Exchange Commission. Like all airlines, HA must file periodic reports with the U.S. Department of Transportation. As a debtor in a chapter 11 case, HA filed in the bankruptcy court a disclosure statement, monthly operating reports, and other papers describing its finances and operations. Any member of the public is entitled to receive SEC, DOT, and bankruptcy court filings without any restriction. A person with the appropriate expertise could use the publicly available information to infer additional information about HA.

9. Many of the documents that HA provided to Mesa (including but not limited to a detailed information memorandum [exhibit 23] and a presentation which HA's management made to the creditors committee in January 2004 [exhibit 15]) were never made available to the public. Those documents contained information that was not "generally available to the public." This information

-5-

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 452   Filed 10/30/07   Page 5 of 14

included:

    a.    HA's projections of the future operational and financial performance of its business. Mesa's own expert witness agreed that a company's future plans are confidential. Although HA made some projections public, none of them separately stated the projected results of the interisland operation and the transpacific and other operations.

    b.    A list of all of HA's contracts with third parties, identifying the other party to the contract and the starting and ending dates of each contract.

    c.    Certain details about HA's passenger profile, such as the number of connecting passengers from Japan and the number of Japanese visitors embarking on interisland tours on HA during their stay in Hawaii.

    d.    Details about HA's expansion plans.

    e.    Details about HA's strategy for marketing to wholesale tour operators.

    f.    Details about HA's contracts with codeshare partners and its outsourcing initiatives.

    g.    Details about HA's pricing policies, frequent flyer program, and credit card relationships.

10.    A skilled and experienced expert in the airline business might have

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 452   Filed  10/30/07   Page 6 of 14

been able to make an "educated guess" about some of these topics by drawing inferences from publicly available information. These inferences would not have been as accurate and reliable as the information which Mesa obtained directly from HA, because the public data are not audited, are not updated and corrected to the same extent as the reporting companies' internal information, and do not include certain important pieces of information, and because such inferences must be based on assumptions that may or may not be accurate. Further, even if one could draw such inferences, it remains true that the actual information (especially the projections) never became generally available to the public.

11. Mesa argues that the information which HA provided was of little if any value to it or any other market participant. This argument misses the point. Mesa promised to keep all of HA's secrets, including any which Mesa regards as unimportant, unreliable, or worthless. For purposes of the definition of Evaluation Material, the only question is whether the information was generally available to the public. HA provided material to Mesa that was not generally available to the public and otherwise fits the contractual definition of Evaluation Material.

12. Pursuant to the Order Granting Motion for Sanctions, filed concurrently herewith, the following findings of fact are binding and conclusive for all purposes in this case:

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 452   Filed 10/30/07   Page 7 of 14

      a.    Mesa retained any Evaluation Material it received from HA and did not return or destroy it as the confidentiality agreement required.

      b.    Mesa misused any Evaluation Material it received from HA when Mesa decided to enter the market for Hawaii interisland air transportation services.

      c.    The misuse of any such Evaluation Material was a substantial factor in Mesa's decision to enter the market.

13.    Mesa breached the confidentiality agreement by failing timely to return to HA or destroy the Evaluation Material, by using the Evaluation Material for purposes other than the evaluation of the potential transaction with HA, and by using the Evaluation Material to gain a competitive advantage when Mesa decided to enter the market for Hawaii interisland air transportation services.

14.    As a natural, proximate, and foreseeable consequence of Mesa's breach of the confidentiality agreement, HA has suffered damages, in the form of lost revenues and increased costs, in the amount of $80,000,000 through October 2007. These damages may reasonably be supposed to have been in the contemplation of the parties when they entered into the confidentiality agreement. Mesa knew or should have known that, when it entered the market, added capacity, and reduced fares, HA would suffer significant losses.

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 452   Filed 10/30/07   Page 8 of 14

15. Mesa's breach of the confidentiality agreement was a substantial factor in bringing about these damages.

16. In response to Mesa's entry into the market, HA has matched Mesa's lower fares and flight schedule. HA has done so in order to avoid losing loyal customers and market share to Mesa. The lost revenue and additional costs which HA incurred are appropriately included in HA's damages. Although HA's matching may have increased HA's short run losses, HA's failure to match would likely have increased the harm which Mesa inflicted on HA in the long run. HA's decision to match Mesa's price and schedule was a reasonable competitive response and one which was reasonably foreseeable by Mesa.

17. HA contends that it will continue to suffer damages in the future. The amount of these damages cannot be determined with adequate certainty. Under current conditions, all three of the major interisland carriers (HA, Mesa, and Aloha Airlines, Inc.) are suffering substantial losses. This situation cannot continue indefinitely; eventually, fares must increase to a level that eliminates the market-wide losses. (It is highly unlikely that any of the three carriers could reduce its costs enough to eliminate its losses.) It is impossible to say with any degree of certainty, however, when this will occur or what the new fare level will be. It is also possible that another carrier could enter the market, holding fares down.

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 452   Filed 10/30/07   Page 9 of 14

These uncertainties make it impossible to determine the fact or amount of HA's future damages without speculation.

18. Mesa argues that any damages award should be much smaller. Mesa contends that it could and would have entered the market after the confidentiality agreement expired by its terms (two years after HA disclosed Evaluation Material to Mesa in May 2004) and that it would have employed the same competitive strategy of lower fares and added capacity. Mesa says that, in that event, HA would have suffered virtually the same reduction in revenues and increased costs, but at a later point in time. Mesa contends that HA's damages are therefore, at most, the difference between HA's actual losses and the present value of the same losses had HA incurred them later. According to the calculations of Mesa's expert witness, this difference amounts to $7,300,000.00.[1]

19. The premise of this argument is that Mesa would have done the same things in 2006-2008 that it did in 2004-2006. This premise cannot be granted without an unacceptable degree of speculation.

---

[1] This calculation assumes that Mesa could have initiated service about nine months after the confidentiality agreement expired in May 2006. In actuality, it took Mesa much more than nine months of planning and preparation before it could begin operations. In a press release, Mesa said that it had begun studying a potential Hawaii operation in early 2004; Mr. Ornstein (Mesa's CEO) discussed the issue with a consultant in December 2004; Mesa began its detailed planning process when it engaged a consultant in April 2005; and it initiated service in June 2006. Using a longer planning and preparation period, perhaps two or more years, rather than a nine month period would significantly increase the damages under this approach.

-10-

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 452   Filed 10/30/07   Page 10 of 14

Based on these findings of fact, I draw the following CONCLUSIONS OF LAW:

1. The court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (O), and 28 U.S.C. § 1334(b). This is a core proceeding.

2. The confidentiality agreement is valid, binding, and enforceable in accordance with its terms.

3. Mesa breached the confidentiality agreement by failing timely to return to HA or destroy the Evaluation Material, by using the Evaluation Material for purposes other than the evaluation of the potential transaction with HA, and by using the Evaluation Material to gain a competitive advantage when Mesa decided to enter the market for Hawaii interisland air transportation services.

4. As a natural, proximate, and foreseeable consequence of Mesa's breach of the confidentiality agreement, HA has suffered compensable damages in the amount of $80,000,000.

5. Mesa's breach of the confidentiality agreement was a substantial factor in bringing about these damages.

6. Any additional damages that HA may suffer in the future cannot be ascertained without impermissible speculation. Ferreira v. Honolulu Star-Bulletin, Ltd., 44 Haw. 567, 575, 356 P.2d 651,656 (1960)("The extent of plaintiff's loss

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 452   Filed 10/30/07   Page 11 of 14

must be shown with reasonable certainty and that excludes any showing or conclusion founded upon mere speculation or guess.").

7. Hawaii courts recognize a distinction between "'the amount of proof required to establish the fact that the injured party has sustained some damage and the measure of proof necessary to enable the jury to determine the amount of damage.'" Living Designs, Inc. v. E.I. Dupont de Nemours and Co., 431 F.3d 353, 366 (9th Cir. 2005)(quoting Chung v. Kaonohi Ctr. Co., 62 Haw. 594, 604, 618 P.2d 283, 290-91 (1980), in turn quoting Ferreira, 44 Haw. at 575, 356 P.2d at 656). Uncertainty as to the "fact of damage" precludes any recovery; uncertainty as to the amount of damage "does not necessarily prevent recovery[,]" although any award of more than nominal damages must be based on "'evidence which afford[s] a basis for measuring the plaintiff's loss with reasonable certainty.'" Ferreira, 44 Haw. at 575-76, 356 P.2d at 656 (quoting 15 Am. Jur. Damages § 23).

8. In this case, there is substantial uncertainty as to both the "fact" and "amount" of future damages alleged by HA. This uncertainty prevents a recovery of such damages.

9. Hawaii law gives the court discretion to award prejudgment interest. "In awarding interest in civil cases, the judge is authorized to designate the commencement date to conform with the circumstances of each case, provided that

-12-

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 452   Filed 10/30/07   Page 12 of 14

the earliest commencement date . . . in cases arising by breach of contract . . . may be the date when the breach first occurred." Haw. Rev. Stat. § 636-16. Prejudgment interest is particularly appropriate where there has been a long delay between the injury and the entry of judgment. Eckard Brandes, Inc., v. Riley, 338 F.3d 1082, 1087 (9th Cir. 2003) (four years). The court may exercise its discretion to "deny prejudgment interest where appropriate, for example, where: (1) the defendant's conduct did not cause any delay in the proceedings, (2) the plaintiff himself has caused or contributed to the delay in bringing the action to trial, or (3) an extraordinary damage award has already adequately compensated the plaintiff." Metcalf v. Voluntary Employees' Benefit Ass'n of Hawaii, 99 Haw. 53, 61, 52 P.3d 823, 831 (2002).

10. I choose not to award prejudgment interest in this case. There has been no unreasonable delay in the commencement or prosecution of this case, and HA will be fully compensated even without an award of prejudgment interest. Accordingly, interest will commence on the date of entry of the judgment.

11. Any remaining Evaluation Material that HA provided to Mesa is property of HA. Pursuant to 11 U.S.C. § 542(a), Mesa should be enjoined to turn over to HA any Evaluation Material in the possession, custody, or control of Mesa or its agents and affiliates, including but not limited to its parent, subsidiaries, joint

-13-

ventures, officers, directors, employees, and assigns and all those in active concert or participation with it.

12.   HA requests an injunction barring Mesa from selling and issuing tickets for interisland service for a one year period.  Injunctive relief is available only if the plaintiff lacks an adequate remedy at law.  Estate of Daily v. Title Guar. Escrow Servs., Inc., 178 B.R. 837, 847 (D. Haw. 1195), aff'd, 81 F.3d 167 (9th Cir. 1996).  In this case, the award of money damages adequately redresses the harm suffered by HA as a result of Mesa's breach of the confidentiality agreement.

13.   This is an "action in the nature of assumpsit" within the meaning of Haw. Rev. Stat. § 607-14.  "'[A]ssumpsit' is 'a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations.'" Blair v. Ing, 96 Haw. 327, 332, 31 P.3d 184, 189 (2001)((quoting Schulz v. Honsador, 67 Haw. 433, 435, 690 P.2d 279, 281 (1984)).  Accordingly, HA is entitled to costs and reasonable attorneys' fees.  The parties shall proceed in accordance with LR 54.2 and 54.3.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: **10/30/2007**