| | |
|---|---|
| In re<br><br>HAWAIIAN AIRLINES, INC.,<br><br>    Debtor.<br>_____<br><br>HAWAIIAN AIRLINES, INC.,<br><br>    Plaintiff,<br><br>  vs.<br><br>MESA AIR GROUP, INC.,<br><br>    Defendant. | Case No. 03-00817<br>Chapter 11<br><br><br><br>Adv. Pro. No. 06-90026<br><br><br><br><br><br><br>Re: Docket No. 492 |

# MEMORANDUM OF DECISION ON
# MOTION FOR ATTORNEYS' FEES AND COSTS

On November 13, 2007, plaintiff Hawaiian Airlines, Inc. ("HA"), filed a Motion for Allowance of Attorneys' Fees and Costs (docket no. 492). Pursuant to LR 54.3(b), the court will decide the motion without a hearing.

Defendant Mesa Air Group, Inc. ("Mesa"), objects to portions of HA's request. Mesa argues that HA is not entitled to fees incurred in HA's successful defense against Mesa's antitrust counterclaim; that the hourly rates should not exceed the prevailing rate in Hawaii, even though Hennigan Bennett & Dorman

("HBD"), HA's lead attorneys, are based in Los Angeles; and that the fees charged by HA's expert witnesses, attorney travel and meal expenses, and computerized legal research charges are not taxable costs.

I agree with Mesa's first and third arguments and therefore I will not permit HA to recover fees incurred in its defense against the counterclaim or the expenses of expert witnesses fees, attorney travel and meals, and computerized legal research. I conclude, however, that Mesa should be required to reimburse HA for the attorneys' fees which HA actually incurred, even though those fees are based in part on Los Angeles rates.

I. FACTS

HA sued Mesa, claiming that Mesa breached an agreement between HA and Mesa by misusing certain confidential information that HA had provided to Mesa.

Mesa filed a counterclaim against HA, alleging that HA's suit represented a violation of the federal antitrust laws as well as unfair competition and intentional interference with prospective economic advantage under Hawaii law. HA successfully moved for dismissal of the counterclaim, on the basis that, under the so-called Noerr-Pennington doctrine, the antitrust laws do not proscribe filing a lawsuit, unless the lawsuit is a sham.

While the litigation was pending, one of Mesa's top officers deliberately

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 563   Filed  01/22/08   Page 2 of 16

destroyed electronic evidence that Mesa had a duty to preserve.  HA moved the court to impose sanctions on Mesa for this misconduct.  After a three day evidentiary hearing, I decided to sanction Mesa by making findings of fact in favor of HA on some (but not all) of the major issues in this case.  After a five day trial, I ruled against Mesa on the remaining issues, entered judgment against Mesa, and ruled that HA is entitled to attorneys' fees under Haw. Rev. Stat. § 607-14.

II.  DISCUSSION

    A.    <u>Fees for Antitrust Defense</u>

Mesa correctly points out that, under federal antitrust law, "a district court can order only a losing defendant – the party that has violated antitrust laws – to pay attorney's fees under Section 4 [of the Clayton Act (15 U.S.C. § 15(a))]." <u>Azizian v. Federated Dep't Stores, Inc.</u>, 499 F.3d 950, 960 (9th Cir. 2007).  HA does not dispute this proposition, but contends that it is nonetheless entitled to fees under Haw. Rev. Stat. § 607-14.  I reject HA's argument for two reasons.

First, HA's argument implies that, where a party sues under a federal law that expressly provides for the recovery of attorneys' fees by only one party, a different party can still recover attorneys' fees under state law.  Allowing state law to reverse the result contemplated by a federal statute would violate Congress' intent in enacting the federal law and would violate principles of federal

-3-

supremacy.

Second, Mesa's claim for violation of the federal antitrust statutes is not within the scope of section 607-14. That section provides that:

> In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five percent of the judgment.

Mesa's counterclaim is not an "action[] . . . on a promissory note or other contract in writing that provides for an attorney's fee."

Nor is it an "action[] in the nature of assumpsit." "Assumpsit" is a Latin term meaning "[h]e undertook; he promised." Kona Enter., Inc. v. Estate of Bishop, 229 F.3d 877, 886 (9th Cir. 2000)(quoting Black's Law Dictionary). "The dictionary defines the term in various ways, all of which have some relationship to a promise or engagement." Id. For purposes of section 607-14, assumpsit is "'a common law form of action which allows for the recovery of damages for *non-performance of a contract*, either express or implied, written or verbal, as well as

-4-

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 563   Filed 01/22/08   Page 4 of 16

quasi contractual obligations.'" TSA Int'l Ltd. V. Shimizu Corp., 92 Haw. 243, 264, 990 P.2d 713, 734 (1999) (quoting Schulz v. Honsador, 67 Haw. 433, 435, 690 P.2d 279, 281 (1984))(emphasis in TSA).

To determine whether a particular action is "in the nature of assumpsit," Hawaii courts focus "on the 'substance' of the action, 'rather than [on] the formal language employed or the form of the pleadings.'" Kona Enter., 229 F.3d at 884 (quoting Schulz, 67 Haw. at 436, 690 P.2d at 282). "As a general proposition, the character of an action is determined from the facts stated in, and the issues raised by, the plaintiff's complaint, declaration, or petition. It is determined from the substance of the entire pleading, the nature of the grievance, and the relief sought, rather than the formal language employed or the form of the pleadings." Schulz, 67 Haw. at 436, 690 P.2d at 282. See also Helfand v. Gerson, 105 F.3d 530, 537 (9th Cir. 1997)("The character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought.").

Mesa's counterclaim does not seek recovery for breach of an express or implied contract. It is therefore not "an action in the nature of assumpsit."

In some cases, the Hawaii courts have held that claims sounding in tort are "in the nature of assumpsit." These cases involve professional negligence, where

-5-

U.S. Bankruptcy Court - Hawaii    #06-90026   Dkt # 563   Filed 01/22/08   Page 5 of 16

the plaintiff can state claims sounding in tort or contract based on exactly the same facts, the tort claims exist only because there was a contract between the parties, and the contract damages are identical to the tort damages. In such cases, a contract created the duty, the breach of which constituted the tort. If there were no contract between the professional and the client, the professional would owe no duty to the client, and therefore the client would have no claims, tort, contract, or otherwise, against the professional. See Blair v. Ing, 96 Haw. 327, 332, 31 P.3d 184, 189 (2001)("Without the implied contract, which could create a cognizable duty, Plaintiffs would have no negligence claim."); and Helfand, 105 F.3d at 538 ("The defendants' duty to Mrs. Helfand derives from their contract with Mr. Helfand.").

The rule of Blair and Helfand does not apply to this case. Mesa could not have framed its claims as either contract or tort claims. No contract created the duty on which Mesa sued.

HA argues that, because HA sued Mesa on a contract, and Mesa countersued for antitrust and other relief based on the filing of HA's lawsuit, Mesa's counterclaim is in the nature of assumpsit. The Hawaii Supreme Court rejected a similar argument in TSA, where it held that an action for rescission of a contract and for damages based on fraud in the inducement was not in the nature of

-6-

U.S. Bankruptcy Court - Hawaii    #06-90026    Dkt # 563    Filed 01/22/08    Page 6 of 16

assumpsit. "The mere fact that [the plaintiff's] claims relate to a contract between the parties does not render a dispute between the parties an assumpsit action." TSA, 92 Haw. at 264, 990 P.2d at 734.

Therefore, HA is not entitled to recover the fees it incurred in defending itself against Mesa's counterclaim. HA has allocated $192,367.50 of fees to this task ($174,320.50 for HBD and $18,047.00 for Carlsmith). Mesa does not challenge that allocation and my independent review of the billing records convinces me that the allocation is correct.

    B.    Local Rates vs. "Mainland" Rates

In determining a "reasonable" fee under section 607-14, courts employ the "lodestar" method set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). DFS Group L.P. v. Paiea Properties, 110 Haw. 217, 222, 131 P.3d 500, 505, (2006). Under this method, the "starting point" is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at 433.

Mesa does not quarrel with the hours expended by HA's counsel. My independent review of the billing records convinces me that the hours claimed were reasonably and necessarily expended.

Mesa argues that the hourly rates awarded must be limited to the customary

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 563   Filed 01/22/08   Page 7 of 16

rates charged by attorneys in Hawaii, and that the higher rates charged by HA's Los Angeles-based counsel must be reduced.[1] Mesa correctly notes that the appropriate hourly rates are the "prevailing market rates in the relevant community," Blum v. Stenson, 465 U.S. 886, 895 (1984), and that, in the Ninth Circuit, "Generally, the relevant community is the forum in which the district court sits." Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997).

There is an important exception to the "forum rule." "[R]ates, other than those of the forum, may be employed if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).[2] In order to employ the

---

[1] Section 330 of the Bankruptcy Code is not applicable to this issue. I have consistently held that section 330 does not include a "forum rule," but that issue is not before me.

[2] Although the Hawaii Supreme Court has not specifically adopted Gates' holding regarding outside-forum rates and Hawaii courts have recognized the general rule that a "reasonable hourly rate is that prevailing in the community for similar work," Reiche v. Ferrera, 2003 WL 139608, at * 8 (Haw.App. Jan. 16, 2003), I conclude that the Hawaii Supreme Court would recognize this exception to the "forum rule." Hawaii courts have looked to Ninth Circuit decisions in determining the factors to be considered in arriving at a reasonable attorney's fee. See, e.g., Reiche, 2003 WL 139608, at * 9 ("The factors adopted by Hawai`i courts [in computing a reasonable fee] are similar to the *Kerr* factors adopted by the Ninth Circuit [in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975)] in federal subject matter jurisdiction cases."). Moreover, the U.S. District Court for the District of Hawaii has observed in the context of section 607-14, citing Gates, that "[t]he court may apply rates from outside the forum if local counsel is unavailable, either because they are unwilling to take the case or because they lack the level of experience and expertise to do so." See Kotoshirodo v. Cart, Inc., 2006 WL 2682676, at * 5 (D. Haw. Sept. 18, 2006).

U.S. Bankruptcy Court - Hawaii    #06-90026    Dkt # 563    Filed 01/22/08    Page 8 of 16

exception, the party seeking fees need not prove an unsuccessful search for local counsel. "The failure to solicit local counsel is not necessarily fatal to proving unavailability. In establishing unavailability, Gates allows proof of either unwillingness *or* inability due to lack of experience, expertise, or specialization. There is no requirement that plaintiffs prove both." Barjon, 132 F.3d at 501-02. (Emphasis in original.)

HA's counsel had unique experience that no other counsel could duplicate. The same attorneys represented HA in the main bankruptcy case. They helped to develop and implement the sale process pursuant to which Mesa gained access to HA's confidential information. They participated in drafting the confidentiality agreement between HA and Mesa. They were intimately familiar with the specific documents that HA disclosed to Mesa and the other bidders.

This experience paid off for HA. From the inception of this case, Mesa attempted to create the impression that it had scrupulously obeyed the letter and spirit of the confidentiality agreement. Mesa went so far as to attach to its initial pleading a declaration from its chief financial officer, Mr. Murnane, in which Mr. Murnane described in great detail the painstaking care which he claimed he had taken to preserve any confidential information which Mesa got from HA. Mesa's

-9-

story began to unravel when a sharp-eyed attorney with HBD read a document that Mesa produced in discovery and thought that it seemed familiar. Further checking revealed that, when Mesa prepared an offering memorandum seeking financing for its new Hawaii operations, it copied verbatim large portions of an information memorandum that HA had given to Mesa under the protection of the confidentiality agreement. This revelation was not independently sufficient to win the case for HA, but it opened the first major breach in Mesa's defenses. It is highly unlikely that an attorney who had not been involved in the bankruptcy sale process would have made this connection.

I therefore conclude that local counsel was "unavailable" to replace HBD, and that HA should be reimbursed for HBD's fees at HBD's regular rates.[3]

In addition, I doubt that the Ninth Circuit would adhere to a rigid version of

---

[3] Mesa notes that the U.S. District Court for the District of Hawaii capped its recovery of attorneys' fees at the prevailing maximum hourly rate in Hawaii ($275) in a separate action against it by Aloha Airlines, Inc. ("Aloha"). Aloha Airlines, Inc. v. Mesa Air Group, Inc., 2007 WL 2320672 (D. Haw. Aug. 10, 2007). In that case, Mesa sought to recover, pursuant to Fed. R. Civ. P. 41(d), the fees and costs it incurred in a short-lived state court action that Aloha voluntarily dismissed before filing a substantially similar action in federal court. The District Court's limitation of fees in Aloha does not compel the same result in this case. Mesa made no argument in its moving papers in Aloha that the Gates exception to the "forum rule" should apply. The district court accordingly applied the general rule that a reasonable fee is determined according to the prevailing market rate in Hawaii. In contrast, HA has made a thorough showing in this case of the unavailability of uniquely qualified local counsel. Mesa has also offered no reason to reduce the fee award to HA's local counsel, the Carlsmith firm. Carlsmith has provided evidence of its normal rates and that HA has in fact paid those rates. Mesa has offered no contrary argument or evidence.

-10-

the forum rule. In a recent decision, the Second Circuit has clarified the forum rule. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110 (2d Cir. 2007). The court began with the proposition that the goal is to determine the "market rate" for a lawyer's services. Id. at 116, citing Missouri v. Jenkins, 491 U.S. 274, 283 (1989), and Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984). By definition, the market rate for legal work is the rate that a "reasonable, paying client" would pay. Id. at 119. The court should therefore attempt to determine what such a client would be willing to pay. "[B]y focusing on the hourly rate at which a client who wished to pay no more than necessary would be willing to compensate his attorney, the district court can enforce market discipline, approximating the negotiations that might ensue were the client actually required to pay the attorney's fees." Id. at 120. If a reasonable client would have hired an out-of-district attorney in a particular case, than the out-of-district rate is the appropriate hourly rate.

The Second Circuit emphasized that "we have in mind no substantial change in circuit law," and instead wanted to warn lower courts in that circuit against an overly strict application of the forum rule. Id.

The Ninth Circuit has not commented on the Arbor Hill decision (which is not surprising, since that decision is barely six months old). It is likely that the

-11-

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 563   Filed 01/22/08   Page 11 of 16

Ninth Circuit would agree with Arbor Hill, because the opinion is persuasive, the two circuits' approaches to fee awards have been similar in the past, and Arbor Hill is best understood as a clarification and restatement of the exception to the forum rule which the Ninth Circuit also recognizes.

The Arbor Hill rule does not always make it easier to set an appropriate hourly rate. In class actions, civil rights cases, and similar cases, the attorney and the client have not negotiated a compensation arrangement in advance. Instead, the judge must, at the end of the case, set the fees by putting him or herself in the shoes of a hypothetical "reasonable, paying client" who wishes to pay "no more than necessary." This imaginative exercise is easier described than performed. In a case such as this one, however, Arbor Hill is helpful, because one need not hypothesize a reasonable, paying client. Instead, two of them are right in front of us. HA and Mesa are both sizable, sophisticated entities that hire lawyers on a regular basis and have a duty to their shareholders to pay no more than necessary for legal services. Both companies decided that it was reasonable to hire Los Angeles counsel to represent them and to pay approximately equal hourly rates for their lawyers.[4] There is no reason to believe that either HA or Mesa would have

---

[4] Mesa's Los Angeles counsel charged as much as $600 per hour in defending the Aloha action, according to the fee request Mesa filed in Aloha, supra n. 3.

-12-

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 563   Filed  01/22/08   Page 12 of 16

agreed to pay an unreasonable hourly rate for the legal services they required in this case. Accordingly, I find that the rates claimed by HA's counsel are reasonable within the meaning of section 607-14.

    C.    Costs

Fed. R. Civ. P. 54(d) provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." "A district court may exercise discretion in allowing or disallowing reimbursement of the costs of litigation, but it may not tax costs beyond those enumerated in 28 U.S.C. § 1920." Title Guar. Escrow Servs. v. Cate, 2006 U.S. Dist. LEXIS 80490, at *16 (D. Haw. Nov. 2, 2006).

Section 1920 provides that a judge or clerk of any court of the United States may tax as costs the following:

    (1)    Fees of the clerk and marshal;

    (2)    Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

    (3)    Fees and disbursements for printing and witnesses;

    (4)    Fees for exemplification and copies of papers necessarily obtained for use in the case;

    (5)    Docket fees under section 1923 of this title;

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 563   Filed 01/22/08   Page 13 of 16

>     (6)    Compensation of court appointed experts, compensation
>            of interpreters, and salaries, fees, expenses, and costs of
>            special interpretation services under section 1828 of this
>            title.

28 U.S.C. § 1920.

Mesa correctly states that HA is not entitled to recover expert witness fees, attorney travel and meals, or computerized legal research under section 1920. HA does not dispute this contention, but argues that the court should award these expenses as an additional sanction for Mesa's spoliation of evidence.

For the reasons set out in the Findings of Fact and Conclusions of Law on Motion for Sanctions entered on October 30, 2007 (docket no. 451) , I have granted sanctions against Mesa which compensate HA for the potential prejudice caused by Mesa's misconduct, but I have avoided punitive sanctions. Except for the fees charged by HA's computer forensics expert, these expense items are unrelated to Mesa's misconduct; HA would probably have incurred these expenses even if Mesa's chief financial officer had not destroyed evidence and attempted to cover up his actions. In contrast, most if not all of the work performed by Lightstone Associates, HA's computer forensics expert, was directly attributable to the spoliation.

Therefore, I will allow the fees and expenses of Lightstone Associates but

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 563   Filed 01/22/08   Page 14 of 16

disallow all other expert witness fees, expenses for attorney travel and meals, and computerized legal research.

III.   CONCLUSION

Based on the above, HA shall be entitled to recover from Mesa attorneys' fees and costs as follows:

    A.   Fees

|  |  |
|---|---|
| HBD fees allowed: | $3,404,497.75 |
| Carlsmith fees allowed: | $249,957.50 |
| Total fees allowed: | $3,654,455.25 |

    B.   Costs

        1.   *HBD*

| Description | Costs Requested | Costs Allowed |
|---|---|---|
| Background research | $1,589.36 | $1,589.36 |
| Binders | $1,966.57 | $1,966.57 |
| CD Copies | $4,525 | $4,525 |
| Color Copies | $1,307 | $1,307 |
| Computerized Research | $45,424.74 | $0 |
| Couriers | $13,960.64 | $13,960.64 |
| Document Mgmt. Printing | $5,444.58 | $5,444.58 |
| In-House Reproduction | $20,960.37 | $20,960.37 |
| Internet Conferences | $242.22 | $242.22 |
| Lightstone Solutions | $79,164.96 | $79,164.96 |
| Meals | $3,020.71 | $0 |
| Parking | $1,799.53 | $0 |
| Postage | $70.71 | $70.71 |
| SH&E Consultant Services | $434,833.25 | $0 |
| Publications | $17.05 | $17.05 |

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 563   Filed 01/22/08   Page 15 of 16

| Description | Costs Requested | Costs Allowed |
|---|---|---|
| Reproduction | $53,180.28 | $53,180.28 |
| Scanning | $3,018.36 | $3,018.36 |
| Supplies | $1,243.63 | $1,243.63 |
| Telecopy | $542.29 | $542.29 |
| Telephone (internal) | $220.67 | $220.67 |
| Telephone (outside) | $1,421.52 | $1,421.52 |
| Transcripts | $60,144.70 | $60,144.70 |
| Travel and Transportation | $107,775.35 | $0 |
| Velobinding | $489.03 | $489.03 |
| Total | $842,362.52 | $249,508.94 |

2. *Carlsmith*

| Description | Costs Requested | Costs Allowed |
|---|---|---|
| Photocopies | $7,551.37 | $7,551.37 |
| Telephone | $173.19 | $173.19 |
| Fax | $6.80 | $6.80 |
| Courier Service | $3,044.10 | $3,044.10 |
| Office Supplies | $665.97 | $665.97 |
| Computerized Research | $1,018.01 | $0 |
| Background Research | $78.48 | $78.48 |
| Witness/Filing Fees | $740 | $740 |
| Meals | $2,096.52 | $0 |
| Transcripts | $1,273.55 | $1,273.55 |
| General Excise Tax | $12,034.56 | $12,034.56 |
| Total | $28,682.55 | $25,568.02 |

Total fees allowed: $3,654.455.25
Total costs allowed: 275,076.96
**Total award to HA:** **$3,929,532.21**

A separate order granting the motion in part and denying it in part will issue.



/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: **01/22/2008**

U.S. Bankruptcy Court - Hawaii   #06-90026   Dkt # 563   Filed  01/22/08   Page 16 of 16